## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No.:

# 08-20317-CIV-MARTINEZ/BANDSTRA

MOISES SELESKY, on behalf of himself
and all others similarly situated,

        Plaintiff,

v.

MERCK & CO., INC.,
SCHERING PLOUGH CORPORATION,
and MERCK/SCHERING PLOUGH
PHARMACEUTICALS,

        Defendants.

_____/

**CLASS ACTION AND DEMAND FOR
JURY TRIAL**

```
FILED by ___JC___ D.C.
ELECTRONIC

FEB. 6, 2008

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI
```

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Moises Selesky, brings this action on behalf of himself and all others similarly situated, as members of the proposed Class, defined as follows:

> All persons who are citizens, residents and domicilaries of the State of Florida who purchased and/or paid for the combination pharmaceutical Ezetimibe/Simvastatin, under the trade name Vytorin, in the state of Florida from April 2006 to the present.

### I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2) and (6) of the Class Action Fairness Act of 2005. The state of citizenship of Plaintiff is different from the state of citizenship of the Defendants, and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs. Plaintiffs and each member of the putative Class have suffered aggregate damages exceeding five million dollars ($5,000,000), exclusive of interest and costs.

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

2.     Venue is properly set in the Southern District of Florida, Miami Division, as
Plaintiff resides and is domiciled in the Southern District of Florida and purchased and used
Vytorin in this district.  Moreover, Plaintiff is a resident of Miami-Dade County, FL where he
purchased and used Vytorin.

## II.     THE PARTIES

3.     Plaintiff Selesky is a resident of Miami-Dade County, Florida.  He was
prescribed, purchased, and ingested Vytorin.

4.     Defendant Merck & Company, Incorporated (hereinafter "Merck") is a
corporation, with its principal place of business located at One Merck Drive, Whitehouse Station,
New Jersey.  Upon information and belief, Merck, in collaboration with Schering-Plough
Corporation (hereinafter "Schering-Plough) at all times relevant, manufactured, advertised,
labeled, marketed, promoted, sold, and distributed Vytorin (ezetimibe/simvastatin) in the United
States, including the State of Florida.

5.     Defendant Schering-Plough is a corporation with its principal place of business at
200 Galloping Hill Road, Kenilworth, New Jersey. Upon information and belief, Schering-
Plough, in collaboration with Merck, at all times relevant, manufactured, advertised, labeled,
marketed, promoted, sold, and distributed Vytorin (ezetimibe/simvastatin) in the United States,
including the State of Florida.

6.     Upon information and belief, Merck/Schering-Plough Pharmaceuticals is a joint
venture between Merck & Co., Inc. and Schering-Plough Corporation, formed in 2000 to
develop and market new prescription medicines for cholesterol management.  Merck and
Schering-Plough are partners in developing, manufacturing, advertising, labeling, marketing,

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

promoting, distributing, and selling Vytorin, and the two companies split the profits from those drugs.

7.     At all times material to this lawsuit, the Defendants were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing, selling, and/or otherwise getting approval for and bringing to market the prescription drug Vytorin, as a drug to treat cholesterol problems.

8.     At all times material to this lawsuit, the Defendants were authorized to do business within the state of Florida and did in fact supply Vytorin within the State of Florida and within this District.

### III.    NATURE OF THE CASE

9.     Plaintiff brings this action for unfair and deceptive business practices.  Plaintiff alleges unlawful, unfair business practices and false and misleading statements of Defendants in the promotion and marketing of their cholesterol drug Vytorin.  Defendants manufacture, promote, distribute, label, and market ezetimibe in combination with simvastatin under the trade name Vytorin, in various milligram tablets.  Specifically, Vytorin is a drug that combines two other drugs, Zetia (ezetimibe) and Zocor (simvastatin).

10.     Zetia, the name brand for the cholesterol drug ezetimibe, was first approved for use in the United States in 2002 for use as a therapy to reduce low-density lipoprotein (hereinafter "LDL cholesterol"), sometimes referred to generally as "bad cholesterol."  If too much LDL cholesterol is present in a patient's blood, it could cause plaque build-up in the arteries and cause serious cardiovascular malfunctions, such as heart attack or stroke.  Merck and

HARKE  &  CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

Schering-Plough jointly developed and marketed Zetia and represented to the public that it would reduce patients' LDL cholesterol levels.

11.     Simvastatin was approved by the FDA in 1999 and is marketed by Merck, under the trade name Zocor.  Merck claims that Zocor raises the levels of high density lipoprotein (herinafter "HDL cholesterol"), generally referred to as "good cholesterol".  High levels of HDL cholesterol are believed to decrease the risk of cardiovascular incidences while low levels of HDL cholesterol are believed to increase the likelihood of cardiovascular incidences.

12.     In 2004, the United States Food and Drug Administration (hereinafter "FDA") approved Merck and Schering-Plough's combination therapy ezetimibe plus simvastatin, marketed by defendants as Vytorin.  Vytorin is a single pill combination of the drugs ezetimibe (Zetia) plus simvastatin (Zocor).  In theory, reducing LDL cholesterol and increasing HDL cholesterol improves cardiovascular health and could prevent atherosclerosis, a disease that can cause heart attacks, strokes, and other cardiovascular problems.  Thus, Merck and Schering-Plough have represented to consumers that use of Vytorin, a drug combining an LDL cholesterol lowering drug (ezetimibe) with an HDL cholesterol increasing drug (simvastatin), will improve a patient's cardiovascular health.

13.     Upon information and belief, over a two year period beginning in 2004, Merck and Schering-Plough began a study known as the ENHANCE study, to examine the effectiveness of Vytorin compared to use of a simvastatin, such as Zocor, alone, in preventing the atherosclerotic process in which plaque impedes the passage of blood through arteries.  Specifically, the researchers examined the progress of plaque development in the carotid artery.  It was a multinational, randomized, double-blind, active comparator trial.  The study included seven hundred and twenty (720) patients with a genetic predisposition for high cholesterol, a

type of high cholesterol syndrome known as Heterozygous Familial Hypercholesterolemia (hereinafter "HPH"). Though the study was completed in 2006, an abstract of the study was not released until January 14, 2008, despite Defendants' internal goal of March 2007. Defendants intend to present the results of the study in March 2008 at the American College of Cardiology meeting.

14.    The ENHANCE Study showed that there was no statistical difference in the effectiveness of simvastatin alone and ezetimibe in combination with simvastatin, and in fact, patients in the study taking Vytorin, the combination therapy, showed an increase in arterial plaque and experienced more heart attacks and other cardiovascular problems related to high cholesterol.

15.    During the time period in which Defendants studied Vytorin, analyzed data from the study, and then withheld the data and conclusions from the public, sales of Vytorin continued to excel, allowing the company to reap substantial profits.

16.    Upon information and belief, hundreds of thousands and possibly even millions of Florida residents have purchased and ingested Vytorin.

17.    Large numbers of medical providers and patients in Florida have been and are being misled about Vytorin's true efficacy and risks.

18.    Plaintiff thus respectfully asks that the Court: (a) enjoin and restrain Defendants from disseminating and distributing false and deceptive claims about Vytorin and order that this business practice is unfair, deceptive and unlawful; (b) award restitution and/or damages (including treble damages, where appropriate) in the amount that was paid for Vytorin prescriptions, plus interest; (c) order disgorgement relief as appropriate; and (d) award all other costs, including attorneys' fees, available under state law.

## IV.   <u>FACTUAL ALLEGATIONS</u>

19.    Defendants are pharmaceutical manufacturers with net income in the billions of dollars.

20.    Defendants have engaged in a conspiracy of repeated and persistent fraud by misrepresenting, concealing, and otherwise failing to disclose to physicians and patients, including Plaintiff and the Class Members, information in their control concerning the safety and effectiveness of Vytorin.

21.    Vytorin was approved by the FDA as safe and effective for treating cholesterol imbalances.

22.    During the past decade, numerous drugs have been introduced for the treatment of cholesterol that, used in monotherapy or in combination therapy, are supposed to better control the disease in patients and reduce the health complications often associated with high LDL cholesterol and low HDL cholesterol, such as heart attacks, strokes, and other cardiovascular complications.

23.    The class action involves a drug combining the drugs ezetimibe with a simvastatin, under the trade name Vytorin, both manufactured, promoted, distributed, labeled, and marketed by Defendants.

24.    Millions of prescriptions for Vytorin were written for patients during the class period.

25.    Defendants have misrepresented information concerning the safety and efficacy of Vytorin for treating cholesterol.  For instance, Defendants have allowed positive information about Vytorin to be disclosed, publicly, but has withheld and concealed negative information concerning the safety and effectiveness of the drug as a treatment for patients with cholesterol

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

problems. Thus, Defendants have prevented physicians and patients, including the Plaintiff and the Plaintiff's physicians, from properly and independently exercising informed judgment. Specifically, Defendants have represented to consumers that Vytorin would both reduce the level of LDL cholesterol in the blood while at the same time increasing the level of HDL cholesterol, thereby decreasing the risk of cardiovascular maladies. However, as Defendant's own study shows, Vytorin is not effective in the reduction of LDL cholesterol and instead of decreasing the risk of atherosclerotic disease, it increased that risk. Further, Defendants have held the results of their study since 2006 and during the almost two years since its completion have made billions of dollars in profits. Had Defendants been open and honest with consumers about the lack of efficacy in the drug, Plaintiff and class members would not have continued purchasing it because it is not effective and is probably dangerous.

26.     The decision to prescribe or ingest a drug is based on the balance between (a) the benefit the patient is likely to derive from the treatment, including the harm or benefit, if any, of providing no treatment or an alternative treatment and (b) the risk that the proposed treatment will cause the patient harm and the nature and severity of the harm.

27.     In deciding whether to prescribe or to ingest a drug, physicians and patients rely on their assessment of information received about the drug from the drug manufacturers. Such information must be accurate and provide an unbiased picture of a drug's safety and efficacy in treating a condition. If the information is false or misleading, neither the patient nor the physician can accurately assess the crucial risk/benefit balance or exercise independent judgment.

28.     At all times material hereto, Defendants, individually and/or collectively, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell,

advertise, warn, and/or otherwise caused Vytorin to be placed into the stream of commerce, and ultimately, to be ingested by the Plaintiff and Class Members.

29.    Vytorin has been widely advertised, marketed, and represented by the Defendants as safe and effective for the treatment of cholesterol problems.

30.    The information provided by the Defendants during the relevant time period was vague, incomplete, or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual benefits or lack thereof associated with Vytorin.  Specifically, Defendants failed to disclose or adequately disclose that there was no benefit from taking Vytorin, as opposed to simply taking a simvastatin alone.

31.    The Defendants marketed Vytorin heavily as a safe and effective treatment for cholesterol, promising fewer side effects than other similar treatments, while concealing information about the true efficacy of the drug, thereby limiting the ability of doctors and their patients to make an adequate risk-benefit analysis of taking the drug.

32.    Defendants' marketing efforts were designed and implemented to create the impression in physicians' and Plaintiff's minds that Vytorin is safe and effective for patients, and that it carried/carries less risk of side effects and adverse reactions than other available treatments.

33.    The marketing and promotion efforts by Defendants, Defendants' advertisers, and sales force served to overstate the benefits of Vytorin, and minimize and downplay the risks associated with the drug.  These promotional efforts were made, while fraudulently withholding important lack of efficacy information from the physicians, the FDA, and the public.

34.    Even today, Defendants have yet to reveal the complete data and the full study so that medical providers and their patients can make a fully informed decision about whether the

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

benefits, if any, of taking Vytorin exceed the risks. Thus, until that data and information is made available to the public, more consumers will be injured who continue to purchase and ingest Vytorin.

35.    Concealing or providing inaccurate or biased information that is material to a prescribing decision misleads the physician and the patient, and is a deceptive and unfair trade practice.

## V.    CLASS ALLEGATIONS

36.    Plaintiff brings this action individually on his own behalf and on behalf of all persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff proposes the following class definition:

> All persons who are citizens, residents, and domicilaries of the State of Florida who purchased and/or paid for the combination drug Ezetimibe/Simvastatin, under the trade name Vytorin, in the state of Florida from April 2006 to the present.

37.    Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the Class Definition. Excluded from the Class are Defendants, its parents, subsidiaries, and affiliates, directors and officers, and members of their immediate families. Also excluded from the Class are the Court all persons within the third degree of relationship to the Court and the spouses of all such persons.[1]

38.    This action may be properly maintained pursuant to Rule 23(a)(1)-(4) because it will satisfy the requirements of numerosity, commonality, typicality, and adequacy:

   a.    Numerosity:  The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable.  While the exact number and identities of members of the Class are unknown to Plaintiff at this time and can

---

[1]    *See* Canon 3.C(3)(a) of the Code of Conduct for United States Judges.

only be ascertained through appropriate discovery, Plaintiff believes and therefore avers that there are thousands of Class members throughout Florida.

b.  <u>Commonality</u>:  There are multiple questions of fact and law common to members of the Class including, *inter alia*, the following:

1.  Whether Defendants have deceived and continue to deceive the medical community, including those providers who prescribed Vytorin, into believing Vytorin does not have the harmful properties and the risks which Defendants know it in fact does have;

2.  Whether Defendants have deprived and continue to deprive medical providers the ability to perform the benefit/risk assessment necessary to the proper prescription and use of Vytorin;

3.  Whether, by Defendants' concealment or provision of inaccurate or biased information that is material to a prescribing decision, it has misled and continues to mislead physicians and patients who rely on that physician's professional judgment;

4.  Whether Defendants have improperly sought to promote and continues to promote Vytorin at the expense of the health and welfare of those who have been prescribed the drug;

5.  Whether Defendants have prevented and continue to prevent physicians from properly and independently exercising their professional judgment on behalf of their patients;

6.  Whether Defendants have promoted directly or indirectly that Vytorin is either safe or efficacious for treating high cholesterol;

7. Whether Defendants are liable for unfair and deceptive business practices;

8. Whether Defendants have overcharged for Vytorin as a result of unfair and deceptive business practices;

9. Whether Defendants entered into a conspiracy to unlawfully market, via unfair and deceptive business practices;

10. Whether Defendants have been unjustly enriched as a result of unfair and deceptive business practices.

c.  Typicality:  Plaintiff's claims are typical of the claims of the other members of the Class in that all such claims arise out of Defendants' conspiracy and conduct in manufacturing, producing, placing into the stream of commerce, marketing, advertising, and selling a drug that was less effective and less safe than represented.  In addition, Plaintiffs and Class Members are Florida residents who purchased and/or paid for Vytorin as a result of Defendants' unfair and deceptive business practices and false and deceptive advertising.  Plaintiffs and the other members of the Class seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiff's claims and those of the Class.

d.  Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Class.  Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiff has retained competent counsel experienced in litigation of this nature.

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

39.     This action is maintainable pursuant to 23(b)(1) because thousands of people purchased and/or paid for Vytorin throughout the state of Florida.  Any different judgments regarding liability and damages rendered on behalf of Plaintiff would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.  Moreover, any individual judgments rendered in favor of the Defendants could form the basis of Defendants' defenses in other individually filed actions that could be dispositive of the interests of other members not parties to the individual adjudications, which could substantially impair or impede such other individual Plaintiff's ability to protect their interests.

40.     This action is maintainable under Rule 23(b)(3) because common questions of law and fact predominate over questions of law and fact affecting individual members of the Class.  Indeed, the predominant issue in this action is whether Defendants' drug is as safe and effective as Defendants have and continue to market and promote it to be.  In addition, the expense of litigating each Class members' claims individually would be so cost prohibitive as to deny Class members a viable remedy.  Moreover, certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiff envisions no unusual difficulty in the management of this action as a class action.

41.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all individuals who purchased and/or paid for Vytorin in the state of Florida for consumption is impracticable.  Such losses are modest in relation to the expense and burden of individual prosecution of the litigation necessitated by the Defendants' wrongful conduct.  It would be virtually impossible for the Class Members to

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

efficiently redress their wrongs individually. Even if all Class Members themselves could afford such individual litigation, the Court system would benefit from a class action. Individualized litigation would present the potential for inconsistent or contradictory judgments. Individualized litigation would also magnify the delay and expense to all parties and to the Court system presented by the issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single Court, as well as economy of scale and expense.

42.     The undersigned counsel for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis. Undersigned counsel will fairly and adequately represent the interests of the Class, have identified or investigated Plaintiff's and Class Member's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

43.     Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## VI.     FIRST CAUSE OF ACTION
## FOR UNFAIR AND DECEPTIVE BUSINESS PRACTICES

44.     Plaintiff adopts and re-alleges Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     Defendants' actions are deceptive and in clear violation of the Florida Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA"), entitling Plaintiff and the Class to damages and relief under Fla. Stat. §§ 501.201-213.

Harke & Clasby LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

46.     Plaintiff is a consumer within the meaning of FDUTPA, who was deceptively and unlawfully induced to purchase and/or use Defendants' product Vytorin.

47.     FDUTPA makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal, while providing a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person, and it provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 is entitled to recover attorney's fees, within the limitations set forth therein, from the non prevailing party.

48.     Defendants engaged in the practice of manufacturing, marketing, distributing, selling, and otherwise placing into the stream of commerce Defendants' product, Vytorin, such actions constituting trade and commerce as defined by Sections 501.203(8) Fla. Stat., thereby subjecting Defendants' actions and/or omissions to FDUPTA.

49.     Defendants' acts, as alleged herein, constitute unconscionable, deceptive, or unfair acts or practices in violation of FDUTPA, as alleged herein.

50.     Upon information and belief, Defendants continue to act deceptively in their manufacturing, marketing, distributing, selling, and otherwise placing into the stream of commerce Defendants' product, Vytorin, as alleged herein.

51.     As a result of Defendants' unfair and deceptive trade practices, Plaintiff and Class Members suffered economic loss related to their purchase of the drug in question as Plaintiff and Class Members paid and/or purchased Vytorin because Defendants made fraudulent and/or misleading claims that their drug was more effective and safer than other cholesterol drugs – a misrepresentation of the true efficacy and safety profile of Vytorin.  Plaintiff and Class Members were thereby induced to purchase the subject drug at a cost that was substantially more than other cholesterol lowering drugs that are as or are more effective and safer than Vytorin.

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

52.     As a result of Defendants' unfair and deceptive trade practices, Plaintiff and Class Members are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, when Plaintiff prevails.

WHEREFORE, Plaintiff and the Class demand judgment for damages against Defendants for an amount in excess of $5,000,000.00, together with interest, costs and attorneys' fees and demands trial by jury of all issues so triable.

## VII.     SECOND CAUSE OF ACTION UNJUST ENRICHMENT

53.     Plaintiff adopts and re-alleges Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

54.     Defendants received from Plaintiff and Class Members certain monies from their purchase of Vytorin which are excessive and unreasonable, and are the result of Defendants' deceptive conduct.  The misrepresentations and non-disclosures by Defendants of the material facts detailed above constitute untrue and misleading marketing and promotion resulting in the unjust enrichment of the Defendants.

55.     As a result, Plaintiff and the Class have conferred a benefit on Defendants, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefit conferred on them.

56.     Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class Member is entitled to an amount equal to the amount each Class Member enriched Defendants and for which Defendants have been unjustly enriched.  Specifically, Defendants have been unjustly enriched by the receipt of millions of dollars, and possibly billions of dollars, in monies and profits from selling Vytorin through their deceptive practices.

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

57.     Plaintiff seeks an order of this Court ordering Defendants to immediately cease such acts of unfair competition and enjoining Defendants from continuing to falsely advertise or conduct business via the unlawful, unfair, or deceptive business acts and practices and untrue and misleading advertising complained of herein.  Plaintiffs additionally request an order to disgorge Defendants' ill-gotten gains, returning all monies to the Class that were wrongfully acquired by Defendants through their deceptive acts, for the purpose of restoring all monies paid to purchase Vytorin.  Individuals who purchased and/or paid for Vytorin for consumption may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

WHEREFORE, Plaintiff and the Class demand judgment for damages against Defendants for an amount in excess of $5,000,000.00, together with interest, costs and attorneys' fees and demands trial by jury of all issues so triable.

## VIII.   COUNT THREE CIVIL CONSPIRACY

58.     Plaintiff adopts and re-alleges Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

59.     Defendants are manufacturers and marketers of pharmaceuticals, including the drug that is the subject of this litigation, Vytorin.

60.     In the year 2000, Defendants Merck and Schering-Plough joined forces and became partners in the third named Defendant in this action, Merck/Schering-Plough Pharmaceuticals, for the purpose of developing, manufacturing, labeling, packaging, promoting, marketing, distributing, and selling drugs purported to reduce the level of LDL cholesterol, to increase the level of HDL cholesterol, and/or to otherwise treat patients with abnormal levels of both types of cholesterol.

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

61.     Upon information and belief, Defendants entered into an agreement to develop, manufacture, label, package, promote, market, distribute, and sell the pharmaceutical product ezetimibe in combination with a simvastatin, under the brand name Vytorin.  Defendants have split the profits gained from sell of Vytorin.  Defendants represented to consumers that Vytorin would decrease LDL or bad cholesterol and increase HDL or good cholesterol and would thereby decrease the Plaintiff and Class Members' cardiovascular risks posed by excess LDL cholesterol and too little HDL cholesterol.

62.     Upon information and belief, further to their joint venture, Defendants, after the drugs had been on the market, undertook a study to determine the efficacy of the products.  Such study is known as the ENHANCE study, and was begun in 2004 and ended in March or April 2006.  That study showed that Vytorin was no more effective in the treatment of increasing good cholesterol and decreasing bad cholesterol than simvastatin alone, and in fact, the atherosclerotic process was greater in patients in the study taking the combination therapy drug, Vytorin.

63.     Although Defendants completed their study in 2006, they purposely did not reveal the abstract of the study until January 2008 and have still not revealed the entire study or the data developed from that study.  Upon information and belief, Defendants made alterations to the goals and methods of the study while the study was in progress, acts that are contrary to established scientific method.  Upon information and belief, Defendants knew that revelation of the information would decrease sales of the product, and in fact, during the time frame between the end of the study and revelation of the abstract of the study, Defendants' profits for the drug Vytorin substantially increased.  Defendants' deliberate, joint decision to withhold such information from medical providers and the consuming public prevented doctors and patients from being able to make an informed risk-benefit analysis in determining whether the drug

should be prescribed.  While possessing information to the contrary, Defendants, for almost two full years, continued to market Vytorin as safe and effective, when they possessed information to the contrary.

64.    Withholding important information about the drugs that was contrary to their marketing statements, Defendants conspired to market the drugs by illegal means, actions that constitute unlawful, unfair, and deceptive trade practices, pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213 (FDUTPA).

65.    As a result of Defendants' agreement to commit unlawful and deceptive trade practices, Plaintiff and the Class have suffered damages, including but not limited to economic damages from their purchase of Vytorin.

WHEREFORE, Plaintiff and the Class demand judgment for damages against Defendants for an amount in excess of $5,000,000.00, together with interest, costs and attorneys' fees and demands trial by jury of all issues so triable.

## VIII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff on behalf of himself and all others similarly situated, pray for judgment and relief on all Causes of Action for:

1.    Restitution and/or damages in an amount to be determined at trial and/or disgorgement of Defendants' ill-gotten gains to individuals who purchased Vytorin for consumption and to restore to the public all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent, or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition or false, untrue, or misleading advertising;

2.     A temporary, preliminary and/or permanent order enjoining the above-described wrongful acts and practices of Defendants;

3.     Plaintiff also seeks damages, restitution, and distribution of all monies recovered by Defendants from sales Vytorin, on behalf of users (past and present) of those drugs, via fluid recovery or *cy pres* recovery where necessary to prevent Defendants from retaining the benefits of their wrongful conduct.

4.     An order requiring Defendants to provide full access to research findings regarding Vytorin's safety and efficacy, or lack thereof, which may provide vital information about those drugs, which both doctors and patients need;

5.     Reasonable attorneys' fees;

6.     Costs of this suit;

7.     Pre- and post-judgment interest; and

8.     Such other and further relief as the Court may deem necessary or appropriate.

Respectfully submitted this 6th day of February, 2008.

Respectfully submitted,

Lance A. Harke, P.A.
Florida Bar No. 863599
Howard M. Bushman, Esq.
Florida Bar No. 0364230

HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
Telephone:     (305) 536-8220
Telecopier:     (305) 536-8229

*Co-Counsel for Plaintiff & Class Members*

-and-

Justin G. Witkin, Esq.
Florida Bar No.: 0109584
Bryan F. Aylstock, Esq.
Florida Bar No.:  78263
Douglass A. Kreis, Esq.
Florida Bar No.: 0129704
Neil D. Overholtz, Esq.
Florida Bar No.:  0188761

Aylstock, Witkin, Kreis & Overholtz, PLLC
55 Baybridge Drive
Gulf Breeze, Florida 32562
(850) 916-7450 Telephone
(850) 916-7449 Facsimile

*Co-Counsel for Plaintiff & Class Members*

≈JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MOISES SELESKY, on behalf of himself and all others similarly situated, | MERCK & CO., INC.,SCHERING PLOUGH CORPORATION, and MERCK/SCHERING PLOUGH PHARMACEUTICALS, |

| (b) County of Residence of First Listed Plaintiff _____ (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____ (IN U.S. PLAINTIFF CASES ONLY) |
|---|---|
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| Harke & Clasby LLP   Telephone: 305-536-8220 155 South Miami Avenue, Suite 600   Facsimile: 305-536-8229 Miami, FL  33130 | |

(d) Check County Where Action Arose: ✓ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
✓ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ✓ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ✓ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

Dade 08-20317-CIV-Martinez Brown

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☒ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

✓ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ✓ NO     b) Related Cases ☐ YES ✓ NO

JUDGE _____     DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause **(Do not cite jurisdictional statutes unless diversity):**

28 U.S.C. 1332 This action is to recover damages sustained as a result of Defendants' marketing and sale of the prescription drug Vytorin.

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23     DEMAND $ _____     CHECK YES only if demanded in complaint:

JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE 2/6/08

**FOR OFFICE USE ONLY**

AMOUNT $350.00   RECEIPT # 9744980   IFP

02/06/08